2011 VT 40

**Albert Leonard STEPHENS III v. APPLEJACK ART PARTNERS, INC., Jack P. Appelman, Aaron S. Young and William Colvin**

[23 A.3d 660]

No. 10-089

¶ 1. April 5, 2011. Defendant Applejack Art Partners, Inc., appeals from the trial court's order enforcing an arbitration award and entering judgment in plaintiff's favor for $1,538,164.50 plus interest. It argues that the court erred by: (1) failing to remand the case to the arbitrator for clarification; and (2) ordering immediate payment of the full amount due. We affirm.

¶ 2. Applejack Art Partners, Inc., is a Vermont corporation whose primary business is the production and sale of artwork. Plaintiff began working with the company in September 2006 and subsequently invested $1,125,000 in the company in exchange for stock shares. In April 2008, Applejack terminated plaintiff's employment. Plaintiff filed suit against defendants Applejack, Jack P. Appelman, Aaron S. Young, and William

Colvin; and Applejack counterclaimed. Applejack also sought an order enforcing its right to repurchase plaintiff's stock. The parties engaged in binding arbitration, and following four days of evidentiary hearings, the arbitrator issued his decision. He found as follows. In October 2006, plaintiff executed an employment contract, stock purchase agreement, and shareholders' agreement. Pursuant to the stockholder's agreement, the executive stockholders (Jack Appelman, Aaron Young, and Applejack) had the right to buy out plaintiff's shares in the event that plaintiff's employment was terminated. The agreement identified a specific formula for valuing the stock shares. It also provided that Applejack could either pay for the stock in full or provide a 10% down payment and a promissory note for payment of the balance in three equal annual installments, plus interest.

¶ 3. Following plaintiff's termination, Applejack proposed to purchase plaintiff's shares for $1,538,164.50. Plaintiff refused, in part because he misunderstood the terms of the stock purchase agreement. The arbitrator concluded that Applejack had the right to buy the shares at the price cited above, and it ordered plaintiff to transfer his stock into an escrow account, pending full performance of all payment obligations. Applejack was directed to provide plaintiff the cash down payment within thirty days of the final arbitration order and to provide plaintiff with a promissory note for three equal annual payments commencing one year after the down payment. The arbitrator noted that he had not accelerated the payments because plaintiff, not Applejack, was responsible for the delay in closing that had occurred to date. The arbitrator issued his final award in September 2009. The superior court confirmed the award in October 2009. In December 2009, the court entered judgment on the order pursuant to 12 V.S.A. § 5679. Specifically, it entered judgment

of specific performance requiring plaintiff and Applejack to attend a closing no later than November 14, 2009, at which time plaintiff would provide all documents required to convey his stock ownership, and Applejack would convey $153,816.45, plus a promissory note in the amount of $1,384,348.05 using the promissory note form that had been attached to the final arbitration award.

¶ 4. Applejack did not meet its obligation on the first payment and plaintiff brought an enforcement action. Plaintiff sought both a judgment confirming the arbitration award as well as an immediate judgment for all amounts awarded by the arbitrator due to Applejack's default. The court granted plaintiff's request. It found that Applejack's default went to the essence of the arbitrator's award and that Applejack could not now resort to the terms of the promissory note to delay its payments. It would be an unreasonable construction of the award, the court explained, to conclude that Applejack was entitled to the benefit of the installment payments contemplated by the promissory note when it completely failed to tender the initial payment due at the closing. Given Applejack's fundamental default, the court found that the only just construction of the arbitrator's award compelled the conclusion that the judgment be entered in the full amount contemplated. The court's interpretation was informed by the arbitrator's inclusion of an acceleration clause in the promissory note, the note that Applejack would have been required to tender had it been prepared to fulfill its other obligations at the closing required by the award.

¶ 5. The court rejected Applejack's argument that it was usurping the authority of the arbitrator by imposing terms "clearly at odds" with the arbitration award. To the contrary, the court found that its remedy was entirely in keeping with the careful relief constructed by the arbitrator. In short, the court reasoned that by failing to comply with the expectation of a cash payment at the closing required by the arbitration award, Applejack forfeited any claim to the further deferral of payments to which it would have been entitled had it tendered the first payment. The court thus ordered judgment against Applejack in the amount of $1,538,164.50, plus interest accruing from November 14, 2009. Applejack appealed.

¶ 6. Applejack argues that the court should have remanded this case to the arbitrator for clarification, although it is not clear what part of the award Applejack believes is ambiguous. Applejack also suggests, apparently for the first time on appeal, that — notwithstanding the arbitrator's decision — plaintiff should simply keep the stock shares because Applejack is unable to pay for them. Finally, Applejack asserts that the court erred in ordering full payment of the award. It suggests that, by doing so, the court modified the arbitration award under Vermont Rule of Civil Procedure 60(b) without authority to do so. It also argues that there was no clear basis for accelerating the payments due.

¶ 7. Applejack's arguments are without merit. Arbitration awards are remanded only under very limited circumstances, including when the award is incomplete or ambiguous. *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987). The purpose of such a remand is to enable the court to "know exactly what it is being asked to enforce." *Id.* (quotation omitted). There was no ambiguity in the arbitrator's award here and no need for a remand. The arbitrator ordered the parties to attend a closing by November 14, at which time they would exchange the stock certificates for a cash payment and a promissory note. Applejack defaulted on its obligation. It provided plaintiff neither the cash payment nor the promissory note. The only remaining question was the remedy for Applejack's default, and

that was a question for the trial court, not the arbitrator. See 12 V.S.A. § 5679 ("Upon the granting of an order confirming or modifying an [arbitration] award, judgment shall be entered in conformity therewith and be enforced as any other judgment."). As in *Ottley*, "we are directed to no authority for the proposition that arbitrators may review compliance with their own awards." 819 F.2d at 376. In fact, as the *Ottley* court recognized, the general rule is to the contrary — "once an arbitration panel decides the submitted issues, it becomes *functus officio* and lacks any further power to act." *Id.* (quotation omitted). We find Applejack's attempt to rewrite the arbitration award equally unavailing. While it might prefer that plaintiff keep his shares, plaintiff has a judgment order entitling him to payment. The trial court was asked to enforce this award, and it was plainly authorized to grant the relief requested.

¶ 8. Finally, the court did not modify the arbitration award under V.R.C.P. 60(b), as Applejack suggests. It merely enforced it. Its decision is consistent with the underlying award, and the court acted well within its discretion in ordering Applejack to pay the full amount due as a consequence of its default. As the superior court explained, Applejack's default went to the heart of the agreement between the parties. Moreover, the promissory note endorsed by the arbitrator — had it been provided — did contain an acceleration clause. Indeed, the arbitrator noted that, at the time of his decision, he had chosen not to accelerate the payments because up to that point, plaintiff was responsible for the delay in closing. The opposite is true now, and it was fair and reasonable to hold Applejack immediately responsible for its full obligation to plaintiff. None of the cases cited by Applejack persuade us otherwise. None involve facts similar to those presented here. See, e.g., *Briggs v. Briggs*, 711 A.2d 1286, 1289 (Me. 1998) (construing terms

of promissory note that provided only for fixed succession of installment payments and included no right to accelerate such installment obligations); *Hills v. Gardiner Sav. Inst.*, 309 A.2d 877, 882-83 (Me. 1973) (same). We are not here construing the terms of a promissory note. Rather, as previously discussed, plaintiff holds a judgment order that entitles him to specific performance, and Applejack failed to perform its obligation under that order. The court imposed an appropriate remedy for Applejack's default, and there was no error.

*Affirmed.*