In the Matter of the Arbitration Between

**LLT INTERNATIONAL INC., f/k/a/ Lee, Liu & Tong Advertising, Inc., Petitioner,**

v.

**MCI TELECOMMUNICATIONS CORPORATION s/h/a MCI Telecommunications, Inc., Respondent.**

No. 98 Civ. 2933(RWS).

United States District Court, S.D. New York.

Sept. 24, 1998.

Mintz & Gold, New York City (Philip Raible, of counsel), Paul J. Ruskin, Douglaston, NY, for Petitioner.

Piper & Marbury, New York City (Joseph G. Finnerty, III, Eric S. Connuck, of counsel), for Respondent.

*OPINION*

SWEET, District Judge.

Petitioner LLT International Inc., F/K/A Lee, Liu & Tong Advertising, Inc. ("LLT"), has moved to vacate an arbitration award rendered in an arbitration between it and Respondent MCI Telecommunications Corporation, S/H/A MCI Telecommunications, Inc. ("MCI") on November 19, 1997.[1] MCI has cross moved to confirm the award. For the reasons set forth below, LLT's motion will be granted, the award vacated and the matter remanded to the arbitration panel.

### Prior Proceedings and Facts

MCI retained LLT to perform certain services with respect to advertising directed to the Asian market under an agreement entered into on July 6, 1994 (the "Agreement") which contained choice of law and arbitration clauses:

18. CONTROLLING LAW

18.1 This Agreement, including all matters relating to the validity, construction, performance and enforcement thereof, shall be governed by the laws of the State of New York without giving reference to its principles of conflicts of laws.

19. ARBITRATION

19.1 In the event a dispute shall arise as to the parties' respective rights, duties and obligations under this Agreement, or in the event of a claim for breach of this Agreement by either party, it is Agreed that such disputes shall be exclusively resolved pursuant to binding arbitration under the Commercial Rules of the American Arbitration Asso-

---

**1.** On the verified petition filed by LLT in the Supreme Court of the State of New York, LLT is designated as the Petitioner and MCI is designated the Respondent. As set forth below, the action was removed to this court upon MCI's motion. The designations of Petitioner and Respondent on the initial petition filed in state court will be applied here.

ciation. The Arbitrator shall determine declaratory and compensatory relief as permitted by the terms of this Agreement and shall award reasonable attorney's fees (including in-house counsel fees) and costs to the prevailing party. The decision of the Arbitrator shall be final and shall be entitled to enforcement in any court of competent jurisdiction. This provision shall not be construed so as to prohibit either party from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

The term of the contract was one year, renewable annually, and there was a termination clause:

## 1. TERM

1.1. The term of this Agreement shall be from January 1, 1994 until December 31, 1995, unless terminated earlier pursuant to the provisions of this Agreement. Thereafter, the Agreement shall continue on a year to year basis unless one party provides notice of an intention to terminate at least 60 days prior to the expiration of the current term.

## 7. TERMINATION

7.1 Either party may terminate this Agreement in the event of a material breach by the other party, provided that such party has given the other party fifteen (15) days written notice of such breach, and the breaching party has failed to cure the breach.

7.2 Either party may terminate this Agreement without cause upon sixty (60) days written notice.

7.3 In the event of termination of this Agreement for any reason, the following shall apply to the compensation provisions of this Agreement:

7.3.1 the quarterly retainer fee paid by MCI shall be prorated to the date of termination and LLT shall remit any excess to MCI within 45 days after termination. Alternatively, MCI may deduct any excess from amounts due LLT. No monthly retainer fees shall be due for the months after termination.

7.3.2 MCI shall pay LLT installation commissions for all new event sales installations submitted prior to the date of termination. Such payments will be made within 30 days after the end of the calendar month in which the new account is installed.

7.3.3 MCI shall pay LLT all outstanding media and production fees, non-retainer translation fees, and expenses within 45 days following termination.

In January 1996, MCI indicated to LLT that it had reservations about the performance of the contract by LLT and the propriety of invoices submitted under the contract and directed its accountants to perform an audit which was completed on July 16, 1996. After the completion of the audit on July 26, 1996, MCI gave notice of termination of the contract.

On August 16, 1996, MCI filed its demand for arbitration as did LLT on September 4, 1996. In accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"), LLT and MCI were each provided by the AAA a list of fifteen potential arbitrators together with biographical information on each. Following receipt of arbitrator lists from both LLT and MCI ranking their preferences, George Miron ("Miron"), Stephen M. Boyd ("Boyd") and James M. Johnstone ("Johnstone") were appointed as arbitrators: The arbitration proceeded and 14 days of hearings were held. In accordance with the AAA rules and the Code of Ethics for Arbitrators in Commercial Disputes (the "Code of Ethics"), Arbitrator Johnstone disclosed certain relationships with the parties and their representatives, LLT objected to his participation and he was replaced. LLT did not object to the participation of Arbitrators Miron or Boyd.

The award was issued on November 19, 1997 by Arbitrators Miron and Boyd. The third Arbitrator Shirin Entezari did not sign the award. The award stated:

AWARD

A. All of MCI's claims are denied.

B. All of LLT's counterclaims are denied.

C. The fees and expenses of the American Arbitration Association (the "Association") shall be borne equally between the parties and paid as determined by the Association.

D. The compensation and expenses of the arbitrators shall be borne equally between the parties and paid as determined by the Association.

E. Each party shall pay its own attorney's fees and expenses and the other costs of this arbitral proceedings.

F. This Award is in full and final settlement of all claims and counterclaims submitted in this arbitration.

LLT sought a preliminary injunction barring the enforcement of the award in the Supreme Court of the State of New York, County of New York. On April 27, 1998, MCI removed the state court proceeding to this court. The motion of LLT to vacate the award and the cross motion of MCI to confirm the award were considered fully submitted on June 17, 1998.

***Discussion***

### I. *The Award Was Internally Inconsistent And Must Be Corrected*

■ The Federal Arbitration Act ("FAA") provides that a court "must grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir. 1987).

■ The grounds for vacating awards are narrow. Indeed, courts have consistently held that " 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " *Dirussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997) (citation omitted). Moreover, the burden is on the party seeking to vacate the award to establish one of the statutory grounds for that relief. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). Thus, the Second Circuit "adhere[s]

firmly to the proposition [ ] ... that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.' " *Landy Michaels Realty Corp. v. Local 32B–32J*, 954 F.2d 794, 797 (2d Cir.1992) (citation omitted).

Under Section 10 of the FAA, 9 U.S.C. § 10, there are four possible grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone a hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudice.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made ....

9 U.S.C. § 10(a). As to the fourth ground, as stated by the Second Circuit in *ConnTech Development Co. v. University of Connecticut Education Properties, Inc.*, 102 F.3d 677 (2d Cir.1996), "[a]n award is mutual, definite and final if 'it resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties.' " *Id.* at 686 (citation omitted).

■ In addition to the statutory grounds set forth in the FAA, an award will be vacated if it is deemed to be in manifest disregard of the law. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986).

■ Moreover, awards may also be remanded to the arbitrators if they are "ambiguous or incomplete." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir.1993); *see Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, International Union UAW*, 500 F.2d 921, 923–24 (2d Cir.1974) (remanding arbitration award because con-

tradictory on its face); *Retail, Wholesale & Chain Store Food Employees Union, Local 338 v. Red Apple Supermarkets*, Civ. A. CV–94–2110, 1996 WL 204503, at *4 (E.D.N.Y. Apr.18, 1996) (explaining that " 'courts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award' " (quoting *Ottley*, 819 F.2d at 376 (internal quotes and citation omitted))); *Dworkin-Cosell Interair Courier Servs. v. Avraham*, 728 F.Supp. 156, 162 (S.D.N.Y.1989) (confirming that " 'courts will not enforce an award that is incomplete, ambiguous or contradictory' " (quoting *Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaartkantoor B.V.*, 574 F.Supp. 367, 371 (S.D.N.Y.1983))); *Zephyros Maritime Agencies v. Mexicana De Cobre, S.A.*, 662 F.Supp. 892, 895 (S.D.N.Y.1987) (stating that court may remand where parties dispute meaning of award, but may not go beyond award "to decide questions that the panel did not decide").

In the instant case, the relationship between the parties was contractual, and the positions taken by the parties in the arbitration were mirror images of claims which arose out of the contract; faithful or fraudulent performance of the contract, appropriate or inappropriate termination of the contract, and opposing claims of *quantum meruit* and RICO violations for actions taken in connection with the contract. While, of course, the arbitrators were not required to state any reasons for their decision to leave the parties where they found them, financially, *see Blue Bell v. Western Glove Works Ltd.*, 816 F.Supp. 236, 241 (S.D.N.Y.1993), they did state that neither side met its burden of proof as to any of their claims. While this statement might be interpreted to mean that there was a failure of proof as to the amount of any damages, that was not what was said, and courts do not have the authority to alter the clear language of an award. *See generally Ottley*, 819 F.2d at 376; *Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 990 F.Supp. 304, 310 (S.D.N.Y.1998).

If neither side prevailed on their respective contentions concerning the contract, then all that was established is that the contract remained in effect until July 1996. In the absence of proof of MCI's claim, there can be no offsets, and therefore the monthly retainer payments of $20,000 a month from the first of the year 1996 were required to be paid. There is no contest concerning the nonpayments, and the award disregards the controlling authority, the Agreement, in this regard. *See Clarendon*, 990 F.Supp. at 311 (remanding award on the ground that the arbitrators exceeded their authority by ignoring the terms of the Memorandum of Understanding into which the parties had entered); *see also Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F.Supp. 480, 484 (S.D.N.Y.1990) (in remanding an award for further arbitration, stating that an "arbitrator cannot re-write a new agreement for the parties").

In addition, LLT claims a concession by MCI in its opening statement to the arbitrators, namely that $1,185,406 is the net LLT claim for unpaid invoices which, according to LLT, are now payable and as to which there was therefore no requirement to meet the burden of proof. The record submitted fails to establish this claim of concession. LLT has thus failed to establish there was no burden of proof to be met with respect to that amount and that LLT under the award is entitled to its net LLT claim.

However, under Paragraph 2.2.6 of the Agreement it was contemplated that LLT would render monthly invoices which would be paid within 30 days. There is apparently no dispute that LLT invoices have been rendered and unpaid. Since the arbitrators have in effect made no finding with respect to the propriety of the termination of the Agreement, there is no basis to suspend the operation of Paragraph 2.2.6. The award is therefore imperfect in this regard requiring remand. *See, e.g., Bell Aerospace*, 500 F.2d at 924 (noting that when an arbitration award appears to be contradictory, it should be committed to further arbitration); *Red Apple*, 1996 WL 204503, at *3–*6 (remanding dispute to arbitrator, having found the meaning of the arbitration award unclear); *Collins*, 736 F.Supp. at 487–88 (remanding proceedings for further arbitration on the ground that clarification was required because the award was imperfectly executed as there was no determination on which of the

accounts commissions were appropriate and that under these circumstances the award was so imperfectly executed that it could not be reviewed); *Dworkin–Cosell,* 728 F.Supp. at 161–62 (remanding award for further arbitration because unclear whether and to what extent it disposed of the parties' disputes).

Because the arbitration award failed to comply with the Agreement's requirements, it manifestly disregarded the controlling authority and is therefore remanded to the arbitrators for reconsideration. As MCI and LLT's claims are not separate and independent such that it would be permissible to affirm any part of the decision rendered by the arbitrators while remanding any other part, the remand will encompass the claims of both parties. *See generally Clarendon,* 990 F.Supp. at 309 (stating that a court is permitted to remand for reconsideration a part of a dispute only to the extent it is "separate and independent" of the other parts).

## II. *LLT Has Failed To Demonstrate Any Bias Of The Arbitration Panel*

■ In order to vacate the award on grounds of bias, LLT must demonstrate "evident partiality" such that a " 'reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.' " *E.g., Reeves Bros., Inc. v. Capital–Mercury Shirt Corp.,* 962 F.Supp. 408, 414 (S.D.N.Y. 1997) (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds,* 748 F.2d 79, 83–84 (2d Cir.1984)). This standard requires more than "speculation that amounts to a claim that there is an appearance of bias." *Id.* at 414; *see also First Interregional Equity Corp. v. Haughton,* 842 F.Supp. 105, 109 (S.D.N.Y.1994). Acrimony or negative feelings between the arbitrators and a party's attorneys do not indicate an "appearance of bias," much less the "evident partiality" required to vacate an award. *Id.* at 105; *see Cook Chocolate Co. v. Salomon, Inc.,* 748 F.Supp. 122, 126–28 (S.D.N.Y.1990), *aff'd,* 932 F.2d 955 (2d Cir. 1991); *International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548, 551–52 (2d Cir. 1981).

■ Additionally, " 'the fact that the arbitrator found in favor of the [other party] clearly does not satisfy [the movant's] burden of showing partiality.' " *Reeves Bros.,* 962 F.Supp. at 414–15 (quoting *Thomas C. Baer, Inc. v. Architectural & Ornamental Iron Workers Local Union No. 580, etc.,* 813 F.2d 562, 565 (2d Cir.1987) (citing *Bell Aerospace,* 500 F.2d at 923)); *see Cook Chocolate,* 748 F.Supp. at 127.

LLT has presented no facts from which a reasonable person could conclude that any member of the arbitration panel "acted out of any improper motives or was predisposed to favor either party." *Reeves Bros.,* 962 F.Supp. at 415. LLT's assertion that the AAA forum is biased because MCI is a big company with many disputes decided by arbitration does not even succeed in showing the mere "appearance of bias," much less demonstrate facts such that a reasonable person could conclude that any member of the arbitration panel was partial. LLT fully participated in 14 days of arbitration hearings without ever raising the objection to the arbitration panel that the AAA forum was inherently biased because held near MCI principal place of business.

No partiality or impropriety by the arbitrators has been established.

### *Conclusion*

For the reasons set forth above, the arbitration decision is vacated and remanded to the arbitrators for reconsideration, and this action is dismissed with leave granted to renew on the initial filing fee.

It is so ordered.